IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

| | | |
|---|---|---|
| WILLIAM T. BROWDER, | ) | |
| | ) | Civil No. 2:99-CV-807 BSJ |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| THE CITY OF MOAB, GRAND | ) | |
| COUNTY, and THE GRAND COUNTY | ) | |
| SOLID WASTE MANAGEMENT | ) | |
| SERVICE DISTRICT #1, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

```
                                    FILED
                          CLERK, U.S. DISTRICT COURT
                            March 12, 2008 (2:02pm)
                              DISTRICT OF UTAH
```

* * * * * * * * *

This matter is currently before the court on plaintiff William T. Browder's ("Browder")

motion for attorney's fees and costs pursuant to the Resource Conservation Recovery Act, 42

U.S.C. § 6972(e).  (Plaintiff's Motion to Recover Litigation Costs (dkt. no. 244).)  The court

heard oral argument on Browder's motion on February 17, 2006.  Michael A. Zody appeared on

behalf of Browder; Benson L. Hathaway, Jr., appeared on behalf of the City of Moab and Grand

County Solid Waste Management Service District #1 (the "Service District"); and W. Scott

Barrett appeared on behalf of Grand County.  Having considered the parties' briefs and

arguments, as well as the law and facts relevant to Browder's motion, the court enters the

following Memorandum Opinion and Order.

## I.       BACKGROUND

Browder owns land in Grand County, Utah, that borders the landfill located on Sand Flats

Road, east of the town of Moab (the "Moab landfill").  In 1999, Browder, who had environmental

concerns regarding the ownership and management of the Moab landfill, brought suit against the City of Moab and Grand County (owners of the land upon which the Moab landfill is located) and the Service District (the operator of the Moab landfill).  Browder asserted claims under the Resource Conservation Recovery Act ("RCRA"), 42 U.S.C. § 6972(e), and the Clean Water Act ("CWA"), 33 U.S.C. § 1365, as well as several state law causes of action.  In all, Browder sought relief on seven claims – two RCRA claims, one CWA claim, and state law claims for inverse condemnation, nuisance, trespass and negligence.

During the course of litigation, the court dismissed Browder's trespass, inverse condemnation, and nuisance claims, and Browder stipulated to the dismissal of his negligence claim.  In September of 2002, a six-day bench trial was held with respect to Browder's remaining claims – his two RCRA claims and his CWA claim.  Following the trial, the court entered an order granting Browder some limited relief on his First Cause of Action (Violations of RCRA, 42 U.S.C. § 6972(a)(1)(A)).[1]  Specifically, the court ordered that: (1) the Service District "shall erect a fence surrounding the entire Moab landfill;" (2) "Defendants must monitor combustible gases at the Moab landfill on a quarterly basis;" (3) "Defendants must keep all monitoring equipment operational;" (4) "Defendants must continue to monitor the Moab landfill cover on a regular basis to prevent extensive pooling or puddling and to diminish the risk of extensive erosion following

---

[1]In his First Cause of Action, Browder sought

an order compelling the City of Moab, Grand County and the Service District to cease their violations of the solid waste rules, stop illegally operating the landfill and bring it into compliance with all applicable requirements including bringing side slopes up to the 3:1 grade, installing a new, properly engineered cap, installing an effective storm water run-on and run-off control system, monitoring for methane gas and groundwater contamination and such other and further actions as are required by the solid waste rules.

(Complaint (dkt. no. 1).)

storms;" (5) "Defendants must maintain and file the reports required by the Class IV permit;" and

(6) "[t]o the extent the Service District outsources any work at the Moab landfill, the Service

District must monitor this work and ensure that all required reports are appropriately filed."

(Order and Judgment, dated March 26, 2003 (dkt. no. 208).)  With respect to Browder's Second

Cause of Action (Violation of RCRA, 42 U.S.C. § 6972(a)(1)(B)) and Third Cause of Action

(Violation of 33 U.S.C. § 1365), the court ruled in favor of the Defendants and dismissed those

claims with prejudice.  The court also ordered each party to bear its own costs and attorney's fees.

(*Id.*)

Thereafter, Browder filed a motion to amend the court's order, raising issues pertaining

only to the court's determination regarding the award of costs and attorney's fees.  (Plaintiff's

Motion to Amend Order and Judgment (dkt. no. 209).)  Browder argued that he was the

prevailing party, that he was entitled to his costs and attorney's fees under the "Costs" provision

of RCRA, 42 U.S.C. § 6972(e), and that the court should reconsider its determination that each

party was responsible for its own costs and fees.  The court denied Browder's motion.  Thereafter,

both sides appealed the court's ruling on attorney's fees.[2]

In *Browder v. Moab*, 427 F.3d 717, 721, 723 (10th Cir. 2005), the Tenth Circuit

determined that this court erred by not explaining its reasoning for ordering each party to bear its

own costs and attorney's fees.  Accordingly, the Tenth Circuit reversed this court's determination

---

[2]Before the court ruled on Plaintiff's Motion to Amend Order and Judgment, Browder and the Defendants each filed a notice of appeal as to the court's March 26, 2003 Order and Judgment.  (*See* Order of the United States Court of Appeals for the Tenth Circuit, dated May 7, 2004 (dkt. no. 227).)  The Tenth Circuit determined that the parties' notices of appeal were filed after the thirty-day deadline and were untimely.  (*Id.*)  Accordingly, the Tenth Circuit determined that it lacked appellate jurisdiction and dismissed the parties' appeals.  (*Id.*)  After the court denied Plaintiff's Motion to Amend Order and Judgment, Browder and the Defendants again filed notices of appeal, this time raising issues relating only to the court's order denying both parties' attorney's fees.

and remanded the case for further proceedings.  *Id.*  In addition, the Tenth Circuit determined that Browder was a prevailing party in this action: "Plaintiff won on one of his RCRA claims when he obtained an injunction against Defendants requiring them to comply with certain portions of federal law . . . .  Certainly, this change in the legal relationship between the parties is sufficient to qualify Plaintiff for prevailing party status."  *Id.* at 719-22.  While determining that Browder was a prevailing party, the Tenth Circuit indicated that on remand, this court should consider whether special circumstances nonetheless exist that would make an award of attorney's fees to Browder in this case unjust.  *Id.*  The Tenth Circuit also instructed that on remand, this court's analysis of the appropriate attorney's fee to be awarded to Browder should be guided by "the Supreme Court's paradigmatic case," *Hensley v. Eckerhart*, 461 U.S. 424 (1983).  *Id.*[3]

This case is now before the court on remand.

Although the Defendants argued on appeal that they were entitled to their attorney's fees, they have abandoned their claim and have made no effort to recover any amount of fees or costs from this court on remand.  Thus, the only issue now before the court is what amount of attorney's fees and litigation costs, if any, Browder is entitled to under 42 U.S.C. § 6972(e) – the "Costs" provision of RCRA.

Browder seeks an award of $226,726.69 ($206,039.20 for attorney's fees and $20,687.49 for costs), which he claims was reasonably incurred in relation to his successful RCRA claim.

---

[3]*Hensley* did not involve the interpretation of § 6972(e), but instead involved questions relating to a prevailing party's entitlement to recover attorney's fees under the attorney's fee provision in 42 U.S.C. § 1988.  In *Hensley*, the Court indicated that "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'"  461 U.S. at 433 n.7.  In *Browder*, the Tenth Circuit noted "the Supreme Court's general recognition of the interchangeability of the case law interpreting similar attorney's fees statutes, e.g. § 6972(e), § 1988(b), § 2000e-5(k), and § 7604(d)," and instructed that the attorney's fee provisions set forth in § 1988(b) and § 6972(e) were "sufficiently analogous to use case law in interpreting either statute interchangeably."  427 F.3d at 720.

4

The Defendants argue that the court, in its discretion, should affirm its previous determination that Browder is not entitled to recover any portion of his costs or attorney's fees.  Alternatively, the Defendants argue that if Browder is awarded any amount for his fees and costs, such award should be "substantially less than" the $226,726.69 that Browder seeks because his "only success was obtaining relief on minor portions of his first RCRA claim."  (Defendants' Opposition to Plaintiff's Motion to Recover Litigation Costs (dkt. no. 248) ("Defendants' Opposition"), at 2, 3.)

## II.    ANALYSIS

Section 6972(e) of RCRA provides that "[t]he court, in issuing any final order in any action brought pursuant to this section . . . , may award costs of litigation (including reasonable attorney and expert witness fees) to the prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."  42 U.S.C. § 6972(e) (2003).  Although the court has discretion in awarding fees to a prevailing party, "'a prevailing plaintiff should *ordinarily* recover an attorney's fee unless special circumstances would render such an award unjust.'" *Browder*, 427 F.3d at 720-21 (quoting *Hensley*, 461 U.S. at 429) (internal quotations omitted) (emphasis in original).  In cases where special circumstances do not exist, the court must "then determine[] the reasonableness-of-the-fee request."  *Browder*, 427 F.3d at 721.

### A.    Special Circumstances

As discussed above, the Tenth Circuit has already determined that Browder is a prevailing party in this case.  While the award of attorney's fees to a prevailing party is discretionary, "[t]he district court's discretion to deny fees to a prevailing plaintiff 'is quite narrow.'" *Dahlem v. Board of Educ. of Denver Public Schools*, 901 F.2d 1508, 1514 (10th Cir. 1990) (quoting *Chicano Police Officer's Ass'n v. Stover*, 624 F.2d 127, 129 (10th Cir. 1980)).  Any denial must be

supported by a strong showing of special circumstances.  *Id.*  "While there have been decisions denying attorney's fees as unjust, these have been few and very limited."  *Love v. Cheyenne*, 620 F.2d 235, 237 (10th Cir. 1980); *see Wilson v. Stocker*, 819 F.2d 943, 951 (10th Cir. 1987).

The Defendants argue that even though Browder is a prevailing party, special circumstances exist such that an award of attorney's fees to Browder would be unjust.  In their opposition to Browder's motion to recover fees and costs, the Defendants argue that comparing what Browder sought to accomplish in this lawsuit with what he in fact achieved by way of relief shows that Browder's success was extremely limited.  The Defendants argue that not only was Browder successful on only one of his seven claims, but also that his degree of success with respect to that one claim was minor.  Although the Defendants did not expressly use the term "special circumstances" in their brief, the Defendants' position appears to be that Browder's overall lack of success constitutes a special circumstance that justifies the denial of attorney's fees to Browder in this case.

Considering the facts of this case, the court determines that it would be an abuse of its discretion to deny any fees to Browder simply because he asserted and pursued certain claims that were ultimately unsuccessful.  Although Browder's overall success in this case was limited, Browder did achieve some meaningful success in relation to his First Cause of Action for certain violations of RCRA.  And while Browder's failure to succeed on a number of his claims may justify a reduction in the amount of fees that he is awarded, as discussed in greater detail below, his overall lack of success does not amount to a special circumstance which would render a fee award unjust in this case.  *See Roe v. Cheyenne Mt. Conf. Resort*, 124 F.3d 1221, 1233 (10th Cir. 1997).

During the hearing on Browder's motion, the Defendants also argued for the first time that the court should deny Browder any award of attorney's fees because the facts of this case are similar to the facts of *Stewart v. Donges*, 979 F.2d 179 (10th Cir. 1992), a case wherein the Tenth Circuit determined that the amount of attorney's fees awarded to a prevailing plaintiff should be limited because of special circumstances. In *Stewart*, after filing an interlocutory appeal from the district court's denial of his motion for summary judgment, a defendant moved to stay the trial in the district court pending his appeal. 979 F.2d at 180. The defendant's motion to stay was opposed by the plaintiff and was ultimately denied by the district court. *Id.* Thereafter, trial proceeded in the district court. *Id.* On appeal, the Tenth Circuit determined that the defendant's interlocutory appeal divested the district court of jurisdiction to conduct a trial and that the trial was therefore void. *Id.* at 181. The case was then remanded to the district court. *Id.* Later, when the issue of the plaintiff's entitlement to attorney's fees was appealed, the Tenth Circuit determined that the plaintiff "was responsible for the district court proceeding with the trial without jurisdiction." *Id.* at 185. Although the plaintiff was entitled to some attorney's fees as a prevailing party due to his limited success in the case, the plaintiff's responsibility for the void trial was a special circumstance that "prohibit[ed] the award of attorneys' fees related to the trial and trial preparation." *Id.* at 184.

During oral argument, the Defendants argued that like the plaintiff in *Stewart*, Browder was responsible for this case unnecessarily proceeding to trial. According to the Defendants, once the court granted Browder's motion for partial summary judgment on his First Cause of Action and ordered the Defendants to "comply with the applicable provisions of 40 C.F.R. Part 258 and U.A.C. R315-301 through R315-320," the Service District, in good faith, began taking

appropriate action to meet the applicable RCRA requirements.  For instance, the Service District began monitoring the Moab landfill's combustible gas, comparing the landfill's alternative cap with the proscriptive cap, and monitoring the landfill's ground water.[4]  The Defendants argued that because of the Service District's good faith action, there was no need for this case to continue to trial; by challenging and attempting to defeat the Service District's action, Browder, like the plaintiff in *Stewart*, was responsible for an unnecessary trial and that therefore special circumstances justify a complete denial of attorney's fees to Browder.

Having carefully considered the facts of this case, as well as those in *Stewart*, the court determines that this case is easily distinguishable from *Stewart*.  The Tenth Circuit's finding of special circumstances in *Stewart* was based on a finding that the plaintiff was responsible for a trial being conducted without jurisdiction.  *Id.* at 184-85.  *Stewart* noted that this circumstance "was, of course, entirely different from the typical reversal on appeal, or even a mistrial, as a valid trial had not been held and never was held."  *Id.* at 181.  In contrast, a valid trial was held in this case.  There has never been any claim that the trial was conducted without jurisdiction or that the trial was otherwise void.  The Tenth Circuit's decision in *Stewart*, therefore, does not support a conclusion that special circumstances exist in this case.[5]

---

[4]Browder acknowledges that the Defendants took these steps following the court's ruling on his motion for partial summary judgment.

[5]Moreover, even if the facts of this case were similar to those in *Stewart*, the holding in *Stewart* would not justify a complete denial of fees to Browder, as the Defendants argued.  In *Stewart*, the plaintiff's attorney's fees were not completely disallowed.  Instead, the Tenth Circuit determined that "[t]he Plaintiff, by reason of his limited success on appeal with its obvious impact on the settlement, is entitled to attorneys' fees."  *Id.* at 184.  And while the court of appeals noted that "[t]he presence of 'special circumstances' usually results in the award of no fees at all" because "such circumstances or events prevail as to the entire proceedings," it determined that there was "no reason why 'special circumstances' should not be applied to clearly defined elements of an unusual proceeding such as the one before us."  *Id.* at 184-85.  The Defendants make no argument that the alleged special circumstances in this case were present during the entire proceedings.  In fact, the Defendants acknowledged that Browder achieved

(continued...)

Having considered the specific facts of this case and having reviewed the applicable case law, including but not limited to those cases cited in *Browder* as meeting the special circumstances test, the court concludes that this is not a case where special circumstances justify the denial of an award of attorney's fees.  Because Browder is a prevailing party and special circumstances do not exist, the court must now determine what amount of fees is reasonable.

**B.      Reasonableness of the Fee Request**

Browder seeks $206,039.20 in attorney's fees.  According to Browder, while he incurred a total of $328,731.10 in attorney's fees in this matter, the $206,039.20 he seeks is a reduced amount that represents only those fees that were reasonably incurred in relation to prosecuting his First Cause of Action – his successful RCRA claim.

The Defendants generally challenge the number of hours and the various rates included in Browder's fee request and argue that "in calculating the lodestar figure," the court "should begin by reducing both the number of hours spent and the rates charged."  (Defendants' Opposition, at 5.)   The Defendants also argue that Browder achieved minimal success in this case and that the amount of fees awarded to Browder, if any, should be substantially reduced to account for such limited success.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley*, 461 U.S. at 433.  This calculation is generally referred to as the "lodestar" calculation.

---

[5](...continued)

meaningful progress in this case when he succeeded on his motion for partial summary judgment on his First Cause of Action.  Thus, at the very most, the Tenth Circuit's decision in *Stewart* would support a reduction in the amount of fees awarded to Browder, but would not support a complete disallowance of fees, as the Defendants have suggested.

*Browder*, 427 F.3d at 722 n.9.  A "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.  To satisfy this burden, "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433.

However, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." *Hensley*, 461 U.S. at 434.  Where, as in this case, a plaintiff is determined to be a prevailing party even though he succeeded on only one or some of his claims for relief, the degree of success obtained by the plaintiff is a crucial factor in determining the reasonableness of a fee award.  *Hensley*, 461 U.S. at 434-36.  Depending on the "'results obtained'" by the prevailing party, the court may adjust the fee award upward or downward.  *Hensley*, 461 U.S. at 434.

## 1.     Reasonable Hourly Rates

"The establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area." *Lucero v. Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987) (citing *Gurule v. Wilson*, 635 F.2d 782, 794 (10th Cir. 1980)).

> To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence -- in addition to the attorney's own affidavits -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  A rate determined in this way is normally deemed to be reasonable, and is referred to -- for convenience -- as the prevailing market rate.

*Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).  Where there is adequate market rate evidence before the court, the court should rely on such evidence in determining a reasonable rate.  *Case v. Unified School Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1256 (10th Cir. 1998).

"Only if the district court does not have before it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate."  *Case*, 157 F.3d at 1257.

    Browder requests that his fees be paid at the following hourly rates:

| NAME | TITLE | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 |
|---|---|---|---|---|---|---|---|---|
| Vicki Baldwin | Attorney | | | $140 | $155 | | $190 | |
| Parker Douglas | Attorney | | $90 | | $145 | | | |
| Mickey McCarthy | Attorney | | | $130 | | | | |
| Michael Zody | Attorney | $150 | $165 | $165 | $185 | $210 | $235 | $250 |
| Sydney Cook | Law Clerk | $65 | $70 | | | | | |
| Seth Hobby | Law Clerk | | | | | | $95 | |
| Jared Parkinson | Law Clerk | $90 | | | | | | |
| R. Bartholomew | Paralegal | $80 | $90 | $90 | $95 | $100 | $105 | |
| Meg Chesley | Paralegal | $65 | | | $95 | | | |
| Amber Christensen | Project Assistant | | | $25 | | | | |
| Tsering Dhondup | Project Assistant | | | $40 | | | | |
| Shalece Robbins | Project Assistant | | | | $30 | | | |
| Meb Anderson | Data Entry | | | $25 | | | | |
| Sam Higginson | Data Entry | | | $25 | | | | |
| | Practice Support | $15 | | | | | | |

    In support of his fee request, Browder submitted the written declaration of Michael A. Zody, his primary attorney in this case, attesting to the reasonableness of the requested fees. Browder also filed the declaration of Martin K. Banks, a shareholder of a law firm that was not involved in this case, supporting the reasonableness of the hourly billing rates sought by Browder and indicating that such rates are "within the typical range of rates charged . . . in the Salt Lake City, Utah legal market."  (Declaration of Martin K. Banks in Support of Plaintiff's Motion to Recover Litigation Costs (dkt. no. 246) ("Banks Decl."), at 2 ¶ 4.)

    The Defendants controvert the reasonableness of the rates requested by Browder and generally argue that such rates should be reduced.  While the Defendants do not specify particular

reduced rates that they believe should apply, they rely on the declaration of Jesse C. Trentadue, which was filed in connection with the Defendants' Opposition.  Trentadue, one of the attorneys who appeared on behalf of defendant Grand County in this matter, reviewed Browder's fee request, including the billing rates of the attorneys, paralegals, law clerks and project assistants who worked on Browder's case, and opined that "the rates and costs charged are excessive in comparison to what is typical in the Salt Lake City, Utah legal market."  (Declaration of Jesse C. Trentadue in Support of Defendants' Opposition to Plaintiff's Motion to Recover Litigation Costs (dkt. no. 248-2) ("Trentadue Decl."), at 2 ¶ 5.)  Without making any distinction between the appropriate rates for attorneys, paralegals, law clerks or project assistants, Trentadue opined that "[a] reasonable rate would be $150.00 per hour."  (*Id.*)

The court determines that the Banks and Zody declarations produced by Browder provide satisfactory evidence that the rates claimed by Browder are in line with the prevailing rates in the area.  While the Defendants generally argue that the claimed rates should be reduced, the only evidence that they rely upon is a general, unsupported assertion in the Trentadue declaration that $150 per hour is a reasonable rate.  As noted above, the Trentadue declaration makes no distinction between the appropriate billing rates for attorneys (regardless of their level of experience), law clerks, paralegals or other legal assistants.  Nor does it make any distinction as to *when* specific fees where incurred in this case.  Given this ambiguity, the court determines that the Defendants have not sufficiently overcome the market rate evidence produced by Browder.  Accordingly, the court determines that the various hourly rates claimed by Browder are reasonable and will be applied in determining the reasonable amount of fees that Browder is entitled to in this case.

2.        **Reasonable Hours**

The court must exclude from the lodestar calculation "hours that were not 'reasonably expended'" on the litigation.  *Hensley*, 461 U.S. at 434 (quoting S. Rep. No. 94-1011, p. 6 (1976)).  It is the prevailing party's burden in an application for attorney's fees to "prove and establish the reasonableness of each dollar, each hour, above zero."  *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986).  To meet this burden, counsel must

> keep meticulous, contemporaneous time records to present to the court upon request.  These records must reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks -- for example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint, and so on.

*Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983).  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Hensley*, 461 U.S. at 433; *id.* at 437 (indicating that billing records should be maintained "in a manner that will enable a reviewing court to identify distinct claims").

Before submitting a fee application to the court, counsel "should exercise billing judgment with respect to the number of hours worked and billed. . . . Billing judgment consists of winnowing hours actually expended down to hours reasonably expended."  *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005) (citing *Hensley*, 461 U.S. at 437, and *Case*, 157 F.3d at 1250).  "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."  *Hensley*, 461 U.S. at 434.

With respect to legal services provided by law students serving as law clerks and by

13

paralegals, the court

> must determine whether law clerk and paralegal services are normally part
> of the office overhead in the area, and thus already reflected in the normal area
> billing rate the court has established in the case.  If those services are not reflected
> in the area rate, the court may award them separately as part of the fee for legal
> services.  The court should scrutinize the reported hours and the suggested rates
> in the same manner it scrutinizes lawyer time and rates.

*Ramos*, 713 F.2d at 558-59.

In his fee request, Browder seeks fees for a total of 1,426.63 hours of work performed by

various attorneys, law clerks, paralegals and project assistants.[6]  Before submitting Browder's fee

application to the court, Browder's counsel exercised some billing judgment with respect to the

number of billable hours claimed.  Specifically, and as will be discussed in greater detail below,

Browder's counsel indicates that he has excluded fees incurred for billable time spent on

Browder's unsuccessful claims.  Counsel also indicates that he has excluded from Browder's fee

request the expert witness fees of David Wilson and Michael Young, the attorney's fees incurred

in relation to such experts, billable hours for various intra-staff communications, and fees

incurred in relation to Browder's appeal of the court's March 26, 2003 Order and Judgment.  In

addition, Browder's counsel claims that he has eliminated hours that were arguably nonessential

or duplicative.  Counsel for Browder claims that a total of 2,235 hours were billed in this case and

that he has excluded approximately 808 hours from Browder's fee request, thereby reducing the

---

[6]Browder's counsel claims that the billable hours claimed in Browder's fee application represent work that was done in connection with the following: (1) "obtaining and defending from subsequent attack the Court's Order Granting Plaintiff's Motion for Partial Summary Judgment, which ordered defendants to bring the landfill into compliance with the municipal solid waste landfill rules;" (2) "forcing defendants to comply with the Court's summary judgment order to come into compliance, specifically in forcing the defendants to go through the proper procedure and follow the law in their ultimately successful efforts to secure the after the fact groundwater monitoring exemption and alternative cap approval;" (3) "preparing for and attending the multiple pre-trial conferences, including the one held at the site of the landfill in Moab, Utah;" (4) trial attendance and preparation. (Declaration of Michael A. Zody in Support of Plaintiff's Motion to Recover Litigation Costs (dkt. no. 247) ("Zody Decl."), at 3 ¶¶ 7-10.)

total amount of fees incurred in this case – $328,731.10 – to the $206,039.20 that Browder now seeks in his fee request.

The Defendants generally object to the number of hours claimed by Browder.  The Defendants' primary and most specific objection to Browder's fee request is that it is not reasonable in light of Browder's limited success during the course of the litigation.  These objections will be addressed in the Reduction of Lodestar for Limited Success section below.  Otherwise, besides generally arguing that the number of hours claimed for time spent during trial should be reduced and that certain hours claimed for particular depositions taken in November 2000 should be eliminated (arguments that were raised for the first time during oral argument and that essentially relate to whether Browder's fees should be reduced to reflect his level of success), the Defendants neither point to any specific hours that are problematic, nor provide any specific reason as to why particular hours should be eliminated or reduced.

Moreover, the Defendants have not suggested an alternative figure that they claim represents a reasonable amount of fees in this case.[7]  Instead, the Defendants simply argue that the number of hours claimed by Browder is not reasonable and that the court should reduce the number of hours claimed by Browder to include only those that were "'*reasonably* expended'" and to exclude hours claimed "'for tasks that were unnecessary, irrelevant and duplicative.'" (Defendants' Opposition, at 5, 7 (quoting *Praseuth*, 406 F.3d at 1257, 1258) (emphasis in original).)

---

[7]While the Trentadue Declaration filed by the Defendants indicates that in Trentadue's opinion, 250 hours at a rate of $150 per hour is reasonable in this case, the Defendants never specifically argue or take the position that this is the total amount of fees that the court should award Browder in this case. ( *See* Trentadue Decl., at 2 ¶ 6 ("It is also my opinion that the total number of hours devoted to this matter is excessive in comparison to what is typical in the Salt Lake City, Utah legal market.  For the claims that Plaintiff actually succeeded on, a reasonable amount of time would have been 250 hours.").)

15

The court is not bound by the parties' opinions regarding the reasonableness of hours spent on the litigation, and the court "may stray outside the recommendations of the parties when awarding *hours* to prevailing attorneys because it knows best the time which reasonably should have been spent on the case."  Case, 157 F.3d at 1256 (emphasis in original); *id.* at 1251.

Setting aside for now the questions of whether Browder's fees should be reduced in light of Browder's degree of success in this litigation and to what extent Browder's counsel has already reduced the hours claimed to account for Browder's level of success, the court will make appropriate reductions to exclude excessive, redundant or otherwise unreasonable hours.

### a.    Clerical Activities

Reported hours for time spent on activities that would normally be absorbed as overhead in private firm litigation are not properly billable to a prevailing party's adversary.  *See Ramos*, 713 F.2d at 554.  The time records of Browder's counsel indicate that a number of hours were claimed for clerical work such as data entry, making copies and creating labels.  The court concludes that this type of clerical work would normally be absorbed as firm overhead. Accordingly, the court eliminates all of the claimed hours for Practice Support (17.25 hours at $15 per hour), T. Dhondup (5.25 hours at $40 per hour), S. Higginson (9 hours at $25 per hour), M. Anderson (3.5 hours at $25 per hour ), A. Christensen (0.5 hours at $25 per hour), and S. Robbins (0.5 hours at $30 per hour).  The court also reduces M. Chesley's compensable hours by 1.1 hours (at $65 per hour), and R. Bartholomew's compensable hours by 21.25 hours (15.25 hours at $90 per hour, 5 hours at $95 per hour, and 1 hour at $105 per hour).

In summary, because of hours claimed for clerical work, the court has reduced the fees requested by Browder by 58.35 hours at various rates, representing a total of $2,832.75.

16

**b.      Background Research**

The court of appeals has determined that "time spent reading background material designed to familiarize the attorney with the area of the law would normally be absorbed into a firm's overhead and that, therefore, attempting to charge an adversary with time spent conducting background research is presumptively unreasonable." *Case*, 157 F.3d at 1253 (citing *Ramos*, 713 F.2d at 554).  The time records of Browder's counsel indicate that a number of hours were devoted to conducting background research.  For this reason, the court reduces M. Zody's compensable hours by 9.4 hours (at $150 per hour), and S. Cook's compensable hours by 104 hours (at $65 per hour).

In summary, the court has reduced a total of $8,170 from Browder's fee request for 113.4 hours of time billed for background research.

**c.      Inadequate Documentation of Hours**

A fee applicant "has the burden of proving its fee entitlement by presenting the district court time records that show how billed hours were allotted to specific tasks." *Case*, 157 F.3d at 1253 (citing *Ramos*, 713 F.2d at 553).  A number of billing entries for work performed by R. Bartholomew in September of 2002, which simply refer to time spent on "preparation for trial" and "assist[ing] with trial," do not meet these requirements.  Because the documentation of these hours is inadequate, an additional reduction of 75.75 hours (at $95 per hour) from R. Bartholomew's compensable hours is appropriate.  Accordingly, $7,196.25 will be deducted from Browder's fee request.

After making the reductions described in this section, which total $18,199, the court determines that a reasonable lodestar amount is $187,840.20.

17

### 3.      Reduction of Lodestar for Limited Success

Arriving at a lodestar calculation does not end the inquiry.  *Hensley*, 461 U.S. at 434.

Where a plaintiff has not prevailed on all of his or her claims,

> two questions must be addressed.  First, did the plaintiff fail to prevail on claims
> that were unrelated to the claims on which he succeeded?  Second, did the plaintiff
> achieve a level of success that makes the hours reasonably expended a satisfactory
> basis for making a fee award?

*Hensley*, 461 U.S. at 435.

In a case where a plaintiff asserts

> distinctly different claims for relief that are based on different facts and legal
> theories[,] . . . counsel's work on one claim will be unrelated to his work on
> another claim.  Accordingly, work on an unsuccessful claim cannot be deemed
> to have been "expended in pursuit of the ultimate result achieved."

*Hensley*, 461 U.S. at 435 (quoting *Davis v. County of Los Angeles*, 8 Empl. Prac. Dec. (CCH)

P9444 (C.D. Cal. 1974)).  In these types of cases, "the hours spent on the unsuccessful claim

should be excluded in considering the amount of a reasonable fee."  *Hensley*, 461 U.S. at 440.

> In other cases the plaintiff's claims for relief will involve a common core of
> facts or will be based on related legal theories.  Much of counsel's time will be
> devoted generally to the litigation as a whole, making it difficult to divide the
> hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a
> series of discrete claims.  Instead the district court should focus on the significance
> of the overall relief obtained by the plaintiff in relation to the hours reasonably
> expended on the litigation.

*Hensley*, 461 U.S. at 435.

In this case, although Browder was successful to some degree on his First Cause of Action

for certain RCRA violations, he also unsuccessfully pursued a separate RCRA claim, a CWA

claim, and state law claims for inverse condemnation, nuisance, trespass and negligence.  While

Browder's seven claims were asserted as separate causes of action, each one was based on

18

Browder's overarching claim that the Moab landfill was being operated and/or maintained in such a manner that waste and debris were not being appropriately contained in the landfill, but instead were being allowed to blow, seep and flow onto surrounding properties, including Browder's property. According to Browder, this blowing, seeping and flowing of waste and debris from the Moab landfill was causing certain harm, including an endangerment to human health and the environment, as well as a diminution in Browder's property value. All of the claims asserted by Browder were intended to remedy this harm in some fashion.

The court determines that Browder's claims involved a common core of facts and were based on related legal theories. This lawsuit, therefore, "cannot be viewed as a series of discrete claims." *Hensley*, 461 U.S. at 435; *see Browder*, 427 F.3d at 723 n.10 ("[C]laims are related if they 'involve a common core of facts or will be based on related legal theories.'" (quoting *Hensley*, 461 U.S. at 435)). Thus, in determining what amount of fees should reasonably be awarded to Browder, the court must focus on the significance of the overall relief obtained by Browder. If Browder obtained excellent results, the amount of attorney's fees awarded to him should encompass all hours reasonably expended. *Hensley*, 461 U.S. at 435. On the other hand, if Browder has achieved "only partial or limited success," the degree of Browder's success becomes a critical factor that the court must consider in determining the amount of the fee award. *Hensley*, 461 U.S. at 436-39.

It is clear that Browder achieved only partial and limited success in this case. In fact, Browder's counsel himself acknowledges that Browder's success was limited. (Transcript of Hearing, dated Feb. 17, 2006, at 30:8 ("We readily agree that there's limited success.").) All of Browder's state law claims were dismissed before trial, and two of Browder's three remaining

claims that went to trial were ultimately dismissed with prejudice.  And although there is no

question that Browder achieved some success with respect to his First Cause of Action for certain

RCRA violations, the overall relief obtained by Browder was limited in comparison to the scope

of the litigation as a whole and did not constitute an excellent result for Browder.

      With respect to his First Cause of Action, Browder achieved meaningful relief early in the

litigation when the court granted his motion for partial summary judgment.  (*See* Minute Entry,

dated February 16, 2001 (dkt. no. 86); Order Granting Plaintiff's Motion for Partial Summary

Judgment (dkt. no. 127).)  Specifically, the court determined that the Moab landfill was subject to

"the new Subtitle D requirements governing municipal solid waste landfills, set forth in 40 C.F.R.

Part 258 and U.A.C. R315-301 through R315-320," and ordered the Defendants to comply with

such requirements.  (Order Granting Plaintiff's Motion for Partial Summary Judgment.)[8]

      After the court ruled in Browder's favor on his motion for partial summary judgment, the

Defendants started taking action to comply with the new Subtitle D requirements.  For instance,

in April of 2001, the Moab landfill was inspected for methane and other combustible gases; none

were detected.  (Findings of Fact and Conclusions of Law (dkt. no. 207) ("Findings and

Conclusions"), at 7 ¶ 24.)  After that time, the Service District continued to monitor the Moab

landfill for gases on a quarterly basis.  (*Id.*)

      Similarly, beginning in as early as June of 2001, the Service District began the process of

---

[8]    In sum, the Standards for Design, Maintenance and Operation under the Subtitle D rules
of the RCRA require that a permit be obtained, a closure plan be submitted and that post-
closure care be initiated, including gas control, boundary posts, monitoring systems,
prescriptive cover or alternative cap approval.  Some of the above mentioned "requirements"
can be waived following certain site-specific determinations delineated in the rules.  40
CFR Part 258 (2002); Utah Admin. Code R315-303-2 through R315-303-4 (2002).

(Findings of Fact and Conclusions of Law (dkt. no. 207), at 6-7 ¶ 20 (footnote omitted).)

determining whether the cap in place over the Moab landfill was equivalent to the standard cover prescribed by Utah Administrative Code R315-303-3(4).  (*Id.* at 7 ¶¶ 26-27.)  As of July of 2001, the Division of Solid and Hazardous Waste ("DSHW") had determined that the cap in place at the Moab landfill provided an equivalent reduction in infiltration of moisture as the standard cover prescribed by the Utah Administrative Code.  (*Id.* at 8 ¶ 28.)  And by October of 2001, the DSHW had approved the Moab landfill's in-place cap as an alternative final cover.  (*Id.* at 8 ¶ 31.)

Moreover, beginning in June and July of 2001, the Service District began the process to receive exemption from the ground water monitoring requirements of Utah Administrative Code R315-308-1(3).  (*Id.* at 8-9 ¶¶ 32-33.)  By July of 2002, the DSHW ultimately approved the Service District's request for an exemption from ground water monitoring on the Moab landfill.  (*Id.* at 10 ¶ 38.)  The DSHW's decision was made after considering substantial information related to the issue, including but not limited to supplemental information that the DSHW requested from the Service District and a report indicating that the potential for groundwater contamination from the Moab landfill was very remote.  (*Id.* at 8-10 ¶¶ 32-37.)

Browder, however, was not satisfied by the action taken by the Defendants.  He continued to argue that the conditions of the Moab landfill endangered human health and the environment and proceeded to litigate the matter, contesting the adequacy of the action taken by the Defendants to comply with the applicable rules, challenging the approvals and exemptions granted by the DSHW, and arguing that the Defendants' violations of the new Subtitle D requirements of the RCRA were ongoing in nature.

After considering the evidence presented at trial, the court determined that Browder had failed to establish that the Moab landfill posed an imminent and substantial danger to health or

the environment or that the landfill was a source from which pollutants were discharged into the navigable waters of the State of Utah or the United States.  (Findings and Conclusions, at 12 ¶¶ 13-14.)  Accordingly, the court dismissed Browder's Second and Third Causes of Action with prejudice.  (Order and Judgment (dkt. no. 208), at 2 ¶¶ 7-8.)

With respect to Browder's First Cause of Action, the court also disagreed with Browder's position that the action taken by the Defendants after the court's ruling on his motion for partial summary judgment was inadequate to satisfy the Subtitle D requirements.  Specifically, the court determined that the Subtitle D requirements were satisfied and that the Defendants were not violating such requirements.  (Findings and Conclusions, at 6 ¶ 21 ("At present, the requirements under the Subtitle D regulations have been met, or are being met, or have been waived by the Director of DSHW.  Therefore, although the more stringent Subtitle D regulations have been invoked since October 2, 1996, the requirements under these rules are satisfied, and thus the Plaintiff cannot argue that violations are ongoing in nature." (footnote omitted)).)  The court also determined that deference was owed to the "decisions made by the Division of Solid Waste Management regarding the landfill's classification and management in granting alternative cap approval and a ground water monitor exemption."  (*Id.* at 6 n.6.)  Thus, while Browder sought an order requiring the Defendants to replace the in-place cap on the Moab landfill with a new, better-engineered cap and to install a groundwater monitoring system, he was not granted this relief.

It is true that Browder obtained some limited relief at trial in connection with his First Cause of Action – relief which served as the basis for the court of appeal's determination that Browder was a prevailing party in this matter.  In this court's opinion, the most significant relief obtained by Browder at trial was the court's order that the Service District erect a fence around

the Moab landfill that would satisfy the requirements of the Utah Administrative Code.  While the court also ordered the Defendants to monitor the Moab landfill on a quarterly basis for combustible gases and to continue to monitor the landfill cover "on a regular basis to prevent extensive pooling or puddling and to diminish the risk of extensive erosion following storms," (*Id.* at 1-2 ¶¶ 2, 4), the Service District had already been engaging in this type of monitoring activity and this relief obtained by Browder was not substantial.  Similarly, while the court ordered that the Defendants "keep all monitoring equipment operational," "maintain and file the reports required by the Class IV permit," and monitor any outsourced work performed at the Moab landfill, (*Id.* at 2 ¶¶ 3, 5, 6), such relief was minor in relation to what Browder sought to achieve in the litigation as a whole.

In sum, although Browder was granted some relief at trial and by way of his motion for partial summary judgment, he fell far short of the results he sought to achieve in this case.  Having assessed the course of litigation, the court concludes that except for Browder's limited success resulting in a limited order, the Defendants not Browder prevailed on all the remaining issues in this case, although none of the Defendants were technically a "prevailing party."

Having determined that Browder's success was extremely limited, the court must now consider what amount of fees should reasonably be awarded to Browder.  Where a prevailing plaintiff has achieved only partial or limited success, "[t]here is no precise rule or formula" for determining the reasonable amount of a fee award.  *Hensley*, 461 U.S. at 436.  "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.  The court necessarily has discretion in making this equitable judgment."  *Hensley*, 461 U.S. at 436-37.  The court, however, must consider the

relationship between the extent of the prevailing party's success and the amount of the fee award. *Hensley*, 461 U.S. at 437-38. "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440.

In this case, Browder does not seek attorney's fees for every hour that was expended on the litigation. Instead, Browder's counsel claims that he has already reduced the amount of fees claimed by Browder in order to account for Browder's level of success. Counsel for Browder claims that he has "narrowed the fees down to those reasonably attributable to the First Cause of Action, for violation of the municipal solid waste landfill rules," by excluding from the fee calculation time billed in relation to any of Browder's six unsuccessful claims. (Zody Decl., at 2 ¶ 6.)

Having carefully reviewed the time records filed in relation to Browder's request for fees, the court determines that contrary to counsel's claim, Browder is seeking some fees for work that related not only to Browder's First Cause of Action, but also to other of Browder's unsuccessful claims. While Browder's counsel claimed that he "excluded the entire time entry from the fee calculation" for "days in which the time entries show time was spent on both the First Cause of Action and any of the other causes of action," (*Id.*), the billing records clearly show that some time is being claimed for activities that certainly related to more than just Browder's First Cause of Action, such as time spent drafting the complaint, drafting initial disclosures, reviewing documents produced by the Defendants, and attending pretrial conferences.

The court acknowledges that counsel made some effort to reduce the amount of claimed fees to reflect Browder's limited success. Specifically, the $206,039.20 in fees requested by

24

Browder represents about 63% of the total amount of fees incurred by Browder in this matter ($328,731.10).  In other words, counsel for Browder has already reduced the total amount of fees incurred by Browder by $122,691.90, or approximately 38%, to account for Browder's unsuccessful claims.

Nevertheless, the court determines that a further reduction is warranted in this case.  In the court's opinion, the overall success Browder achieved in this litigation does not merit the amount of attorney's fees he is requesting.  Based upon reasonable compensable hours and hourly rates, the court has calculated Browder's lodestar figure to be $187,840.20.  Considering the degree of Browder's success in this action in comparison to the scope of the litigation as a whole, the court determines that a further reduction of $115,000 from the lodestar figure is appropriate, yielding an adjusted fee award of $72,840.20.  This amount of fees is reasonable in relation to the results that Browder obtained in this case.

C.      Costs and Expenses

RCRA provides that the court may award costs of litigation to a prevailing party "whenever the court determines such an award appropriate."  42 U.S.C. § 6972(e).  The Tenth Circuit has indicated that reasonable expenses incurred in representing a client in a civil rights case should be included in the attorney's fee award if such expenses are "'normally itemized and billed in addition to the hourly rate.'"  *Mares*, 801 F.2d at 1208 (quoting *Ramos*, 713 F.2d at 559); *see Case*, 157 F.3d at 1258.  That rule should apply as well to awards granted by Section 6972(e), the statute involved in this case.  *See Browder*, 427 F.3d at 720 (providing that § 6972(e) and § 1988(b) are "sufficiently analogous to use case law in interpreting either statute interchangeably");  *Mares*, 801 F.2d at 1208 (applying the rule regarding expenses in civil rights

cases to fee awards granted pursuant to the Truth-in-Lending Act, the Fair Credit Reporting Act, and the Fair Debt Collection Practices Act).  "'For items not reimbursable as attorney's fees . . . , the general cost statute, 28 U.S.C. § 1920, is controlling.'"  *Case*, 157 F.3d at 1258 (quoting *Ramos*, 713 F.2d at 560).  "Section 1920 allows certain costs to be taxed against the losing party, including 'fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case' and 'fees for exemplification and copies of papers necessarily obtained for use in the case.'" *Ramos*, 713 F.2d at 560 (quoting 28 U.S.C. § 1920(4)).  "Of course, the burden in on the prevailing plaintiff[] to establish the amount of compensable costs and expenses to which they are entitled," and "[p]revailing parties necessarily assume the risks inherent in a failure to meet that burden."  *Mares*, 801 F.2d at 1208.

Browder seeks $20,687.49 in litigation costs and expenses.  According to Browder's counsel, while $39,172.16 in costs and expenses were incurred, counsel eliminated $1,541.60 for color copies, $604.11 for aerial photographs and other miscellaneous expenses, $3,502.75 for expert witness fees, and a certain amount for filing fees, and then reduced the remaining amount by 38% to account for Browder's limited success.  Browder's counsel made no effort to establish that the costs claimed were necessarily obtained for use in the case, and no evidence was proffered to the court regarding whether the expenses Browder was claiming are normally itemized and billed in addition to the attorney's hourly rate or are normally absorbed as firm overhead.[9]  Counsel for Browder did not explain with any degree of specificity why the claimed amounts were reasonable, but instead simply summarized in general terms how he arrived at the

---

[9]While the Banks declaration provided that "the types of costs charged by Parson Behle & Latimer in this matter . . . are of the type and amount typical in this legal market for a complex environmental litigation matter," (Banks Decl., at 2 ¶ 4), this statement does not provide the court with any information regarding whether such costs are normally absorbed as firm overhead or are separately billed to the client.

total amount of claimed costs and expenses.

The Defendants' objection to the amount of costs and expenses was equally generalized and unhelpful.  The Defendants did not make any specific objection to any of the particular fees or expenses claimed by Browder.  While the Defendants generally argue that the court should award Browder "an amount substantially less than $226,726.69" for his combined attorney's fees and costs, the Defendants made no effort to separately address Browder's request for costs and expenses.  (Defendants' Opposition, at 2.)

The court acknowledges that Browder's counsel has already made certain reductions to the amount of costs and expenses incurred to account for non-essential charges and Browder's degree of success in this matter.  However, for the reasons set forth below, the court determines that an additional and substantial reduction should be made to the claimed amount of costs and fees in order to achieve what the court considers a reasonable award.

### 1.    In-House Copy Costs

According to the billing records submitted to the court, $11,769.14 was billed for in-house copying costs.  The billing records also indicate that such copies were billed at a rate of $0.15 per page.  Counsel for Browder has not addressed why the rate of $0.15 per page is reasonable.  Common experience indicates that outside copy centers charge significantly less than $0.15 per page, regardless of the volume of copying.

Using the billed rate of $0.15 per copy, Browder apparently seeks reimbursement for approximately 78,461 in-house copies.  Counsel for Browder has not made any effort to establish that tens of thousands of copies were necessarily obtained for use in this case.  Moreover, the court is unable to determine the reasonableness of such copies because the internal accounting

27

records provided by Browder do not identify what was being copied or for what purposes such copies were being made.  In this case, where there were no unusual circumstances requiring an excessive amount of copies, and where Browder' amended exhibit list at trial included only 325 exhibits (*See* Minute Entry, dated September 9, 2002 (dkt. no. 183)), the court determines that the amount claimed for in-house copies is exorbitant and should be substantially reduced.  *See Case*, 157 F.3d at 1258-59.

### 2.      Outside Copies

The court also determines that a significant reduction should be made to the amount awarded for outside copies, for which a total of $2,966.17 was billed.  After carefully reviewing the internal accounting records produced to the court, the court is unable to determine what was being copied, for what purpose, and at what cost.  In fact, because of the lack of specificity in the descriptions included in the billing records, it is unclear to the court what specific service or services were being provided.  While the description of the billing code is "outside copies," the absence of information in the billing records is such that it is unclear whether the amounts billed under this code were incurred because actual copies were made or because some other service was provided, such as the bates-stamping of documents.

The billing records are also entirely unclear regarding what specific rates were applied for the services being provided.  For instance, on page 54 of Exhibit 2 to the Zody declaration, there are four billing entries included under the code corresponding to "outside copies."  Each of those four entries indicates a quantity of one, and the rate and the amount billed in each separate entry are identical.  Yet the amounts billed in the four entries range from $23.55 to $270.39.  Unlike the entries made for in-house copies, which indicate the quantity of copies made, a rate of $0.15, and

28

a total amount billed (which equals the product of the quantity times the rate), the court is not able to determine what rate was applied or the reasonableness of such rate.

In addition, Browder's counsel has not made any showing that the "outside copies" were necessarily obtained for use in this case.  For these reasons, the court determines that a further reduction should be made from the total amount of costs claimed by Browder.

### 3.        Court Reporter Fees

A total of $4,228.75 was also billed for court reporter fees.  Court reporter fees, including the cost of taking and transcribing depositions, may be taxed if the transcript was necessarily obtained for use in the case.  *Ramos*, 713 F.2d at 560.  Counsel for Browder has not specified what portion of this amount was incurred in relation to hearing transcripts and what portion relates to deposition expenses.  Moreover, counsel has made no attempt to show how those expenses relate to Browder's successful claim and has again failed to meet his burden of showing that such costs were necessarily incurred for transcripts used in this case.

### 4.        Electronic Research

The billing records provided to the court indicate that $7,185.50 was billed for electronic research conducted on Westlaw and Lexis.  The billing records that Browder produced do not identify what issue was being researched and do not allow the court to differentiate between research conducted in relation to Browder's successful claim and research conducted in relation to Browder's unsuccessful claims.  In addition, Browder's counsel has not provided any evidence that charges for such research are normally itemized and billed to the client in addition to the attorney's hourly rate.  Accordingly, while Browder's counsel claims to have already made a general reduction, the court concludes that the amount awarded for electronic research should be

further reduced.  *See Case*, 157 F.3d at 1258.

### 5.      Expenses Absorbed as Overhead

Having reviewed the internal accounting records provided to the court, and in the absence of any specific evidence to the contrary, it is the court's opinion that several of the claimed expenses were incurred in relation to services that are basic and fundamental to the operation of a law office.  As such, those expenses ought to be absorbed, at least to some degree, as firm overhead.  Such expenses include those billed for postage (including Federal Express and United Parcel Service), binding, drilling, telecopies, and long distance calls.  While the court appreciates that a law firm must cover its overhead, overhead considerations are taken into account when the hourly rates of the attorneys and paralegals are determined.  Counsel has not established that Browder was billed for every package mailed, every hole drilled, every fax sent, or every call made.  Nor has counsel shown that a client would think it reasonable for such expenses to be itemized and billed.  The court determines that it is not reasonable for the Defendants to be charged for expenses incurred during lunch meetings between Browder and his counsel.  For these reasons, a reduction in the total amount of expenses billed in this case is appropriate.

### 6.      Binders and Publication Cost

Finally, the court concludes that the $373.58 billed for "binders" and the $33.25 billed as a "publication cost" will be disallowed due to a complete lack of information regarding what service was provided, for what purpose, and at what rate.  Browder has not met his burden that these expenses are allowable or reasonable.

In summary, based on the deficiencies in Browder's request for costs and expenses described above, as well as the circumstances of this case, the court determines that a total

reduction of $13,500 from the costs and expenses claimed by Browder is reasonable.

Accordingly, Browder is entitled to an award of $7,187.49 in costs and expenses.

For the reasons set forth above,

**IT IS ORDERED** that Plaintiff's Motion to Recover Litigation Costs (dkt. no. 244) is

hereby GRANTED to the extent that Browder is awarded the sum of $80,027.69 ($72,840.20 for

reasonable attorney's fees and $7,187.49 for allowable costs and expenses).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED this _12_ day of March, 2008.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge